# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael J. McGillicuddy, a Special Agent with the Federal Bureau of Investigation, Washington, D.C., being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a Government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request and execute arrest and search warrants pursuant to Title 18 U.S.C. §§3052 and 3107; and Department of Justice ("DOJ") Regulations set forth at Title 28 C.F.R. §§ 0.85 and 60.2(a).

2. I have been employed by the FBI for approximately 15 years. During my tenure with the FBI, I have investigated and participated in the investigations of a variety of criminal matters. In addition to my regular duties, I am currently also tasked with investigating criminal activity that occurred in and around the Capitol grounds on January 6, 2021.

## PURPOSE OF AFFIDAVIT

3. This affidavit is being submitted for the limited purpose of establishing probable cause to believe that ZACHARY HAYES MARTIN ("MARTIN") has violated Title 18 U.S.C. § 1752(a)(1) and (2), Restricted Buildings or Grounds, and Title 40 U.S.C. § 5104(e)(2), Unlawful Activities on Capitol Grounds, as set forth below:

   a. Title 18 U.S.C. § 1752(a)(1) and (2): Restricted Building or Grounds - makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official

functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

b. Title 40 U.S.C.§ § 5104(e)(2)(D) and (G): Unlawful Activities on Capitol Grounds - makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

4. The statements contained in this affidavit are based in part on: information provided by FBI Special Agents, Task Force Officers, and FBI Analysts, written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, information gathered from the results of physical surveillance conducted by

law enforcement agents, reporting by eye witnesses, independent investigation and analysis by FBI Special Agents/Analysts and computer forensic professionals, and my experience, training and background as an FBI Special Agent. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested complaint.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, the U.S. Attorney's Office for the District of Columbia is investigating this case, which, among other things, involves possible violations of Title 18 U.S.C. § 1752, Restricted Buildings or Grounds, and Title 40 U.S.C. § 5104(e)(2), Unlawful Activities on Capitol Grounds. The conduct at issue includes an overt act in the District of Columbia, in the form of entering a restricted area around the U.S. Capitol on January 6, 2021, as part of a mob that disrupted the proceedings of Congress, engaged in property damage and theft, and caused physical injury.

## BASIS FOR PROBABLE CAUSE

6. On January 6, 2021, I was on duty and performing my official duties as a Special Agent with the FBI's Washington Field Office (WFO). Specifically, I was deployed to the vicinity of the U.S. Capitol and tasked with investigating criminal activity in and around the Capitol grounds. As a Special Agent, I am authorized by law or by a Government agency to

engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws. The Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the Capitol. On January 6, 2021, the exterior plaza of the Capitol was also closed to members of the public.

7. On January 6, 2021, a joint session of the U.S. Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the U.S. House of Representatives and the U.S. Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

8. As the proceedings continued in both the U.S. House of Representatives and the U.S. Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

9. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol;

however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

10. Shortly thereafter, at approximately 2:20 p.m., members of the U.S. House of Representatives and U.S. Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the U.S. Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

11. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

12. The FBI became aware of the involvement of MARTIN after a tip was submitted by W-1. W-1 stated that he/she had observed public posts on Facebook indicating that MARTIN was present at the U.S. Capitol during the riots and had "livestreamed" a video of himself in the U.S. Capitol building on Facebook. Based on my training and experience, I am aware that Facebook is an online social media platform accessible from both mobile devices and computers. I am also aware that Facebook is used by individuals around the world to post information and share content (including text, pictures, and video files, among other information) with "friends" (i.e., Facebook users that the accountholder has accepted as a member of the accountholder's network) and/or the public. I am also aware that Facebook accountholders can "livestream" video content on Facebook, meaning that they can upload and display video content to other

Facebook users in real-time, can save this content for future viewing by Facebook users, and can choose who may view these videos (e.g., the accountholder can make the video "public" to all Facebook users or can limit the video so it is only visible to certain Facebook users). W-1 subsequently provided the FBI with screenshots he/she had observed circulating on Facebook, including a screenshot that appears to be from MARTIN's livestream video (*see* Images 1 and 2 below).



Image 1                                    Image 2

13.     An FBI Special Agent subsequently interviewed W-2, who indicated that he/she had met MARTIN in person and is friends with MARTIN on Facebook. W-2 stated that, on or

about January 6, 2021, he/she had watched a portion of a livestream video on MARTIN's Facebook account, and recognized MARTIN in the video. Based on this video, W-2 believed that MARTIN was inside the U.S. Capitol building during the riots. W-2 also provided the FBI Special Agent with a screenshot that he/she had found online, which he/she believed was a screenshot of the video he/she watched on MARTIN's Facebook account (*see* Image 3 below).

**Image 3**



14. An FBI Special Agent also interviewed W-3, who indicated that he/she was familiar with what MARTIN looks like, having seen MARTIN in a neighboring community. W-3 indicated that he/she had seen a portion of a video livestreamed on Facebook, which he/she believed showed MARTIN in the U.S. Capitol building during the riots. W-3 was shown Image 2 and agreed it appeared to be from the video he/she had seen.

15. An FBI Special Agent interviewed W-4, who indicated that he/she had met MARTIN in person and was friends with MARTIN on Facebook. W-4 told the agent that he/she had spoken with MARTIN at a bar in Springfield, Missouri during the week leading up to January 6, 2021. During the conversation, MARTIN told W-4 that he was going to travel to Washington, D.C. W-4 told the agent that he/she saw a livestream video on MARTIN's Facebook account showing MARTIN walking through the U.S. Capitol building during the riots on January 6, 2021. W-4 was shown Image 2 and agreed it appeared to be from the video W-4 had seen on Facebook. W-4 was also shown Image 1 and confirmed that it matched MARTIN's Facebook profile, which W-4 believed had uploaded the video.

16. An FBI Special Agent interviewed W-5, who indicated that he/she had known MARTIN personally for several years. W-5 told the agent that he/she saw a livestream video on Facebook showing MARTIN in the U.S. Capitol building during the riots on January 6, 2021. W-5 also provided a phone number for MARTIN: XXX-XXX-4394. On or about January 16, 2021, the agent called that number and the voicemail indicated that the owner of the number was "Zac."

17. FBI investigation to date indicates that MARTIN's Facebook account was likely closed after January 6, 2021. On or about January 13, 2021, an FBI employee accessed Facebook but was unable to find an active account belonging to MARTIN. However, the FBI employee

observed and took screenshots of public conversations between other Facebook users discussing MARTIN and his livestream video. One of these conversations claimed to provide a link to the video. While the link was no longer active by the time the FBI attempted to access it, based on my training and experience, I recognized that it included a specific Facebook User Identification ("UID") number.

18. Records from Facebook confirmed that the above-referenced Facebook UID was registered using the vanity name "Zac Martin," was associated with the phone number XXX-XXX-4394, and was closed on or about January 10, 2021 at 01:46:48 UTC.

19. On or about January 12, 2021, FBI personnel searched the Missouri Department of Revenue database for MARTIN's driver's license photograph. I believe the photograph they located for MARTIN is of the same person shown in the screenshots provided by the witnesses.

20. On or about January 17, 2021, an FBI Special Agent conducted a Google Image search to attempt to identify the picture behind MARTIN in Images 2 and 3. This Google search revealed a photo attributed to The New York Times, which shows a painting of former New York Congresswoman Shirley Chisholm located inside the U.S. Capitol building (*see* Image 4 below).

**Image 4**



I have reviewed the photo and its corresponding article in The New York Times, "Capitol Portraits, a Perk of Access, Become a Symbol of Excess Instead," published February 5, 2016, which highlighted the painting of Congresswoman Chisholm as one of several portraits inside the U.S. Capitol building. The painting in the photo is consistent with the image behind MARTIN in Images 2 and 3.

## CONCLUSION

21.   Based on the foregoing, I submit that there is probable cause to believe that ZACHARY HAYES MARTIN violated 18 U.S.C. § 1752(a)(1) and (2) and  40 U.S.C. § 5104(e)(2)(D) and (G).

Respectfully submitted,

_____
MICHAEL J. McGILLICUDDY
Special Agent, FBI Washington Field Office

Sworn to via telephone after submission by reliable electronic means, Fed. R. Crim. P. 3, 4(d), and 4.1, on this 21st, day of January 2021.

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE